**UNITED STATES, for Use of McNULTY BROS. v. NOEL CONST. CO. et al.**

(District Court, D. Massachusetts. August 8, 1924.)

No. 818.

1. **Reference ⚖�っ99(2)—Auditor's finding not conclusive on court.**

Auditor's finding is not conclusive on the court as to a matter as to which documentary evidence was introduced and witnesses testified before the court.

2. **United States ⚖�=73 — Under public works contract, plasterer held liable for damage to sash and glass.**

Under contract for public works for the United States, requiring all finished work to be protected by the plasterer against damage from plastering, *held*, he was liable for damage so occurring to sash and glass, previously put in place on order of the government representa-

tive, without any objection by him when informed that this would be done before the plastering.

3. **United States ⚖⟹67(1)—Statute for bond by contractor for public works liberally construed.**

The statute for giving of bond by contractor for public works, for protection of those furnishing labor and material used in the work, is, with the bonds given under it, to be liberally construed to effectuate its purpose, so that mere technical defenses in action on such a bond will be disregarded.

At Law. Action by the United States, for the use of McNulty Bros., against the Noel Construction Company and others. Judgment on auditor's report, as modified.

Charles R. Elder, of Boston, Mass., and William F. Kimber, of New York City, for plaintiff.

H. R. Bygrave and H. V. Cunningham, both of Boston, Mass., for defendants.

MORTON, District Judge. Only two questions of fact are now in dispute, viz.: (1) Certain countercharges against McNulty Bros. by Noel for removing rubbish and for making good damage done by the plasterers; and (2) allowances for extras to Daniels and Blomquist on painting. The auditor disallowed the first to a considerable extent, and allowed the second against the defendant for about 50 per cent. of the claim.

[1, 2] As to (1), two witnesses testified orally before me, and letters and other documentary evidence were introduced. The auditor's finding in a case of this sort is weighty evidence; but it is not so conclusive as a master's finding would be. The question still is how the facts appear to the court. The contract explicitly provides that all finished work, "particularly wood and glass," shall be protected by the plasterer against damage from the plastering, and that such damage shall be made good by the plasterer. Section 477. This contemplates that there might be finished wood and glass in the buildings where the plastering was being done. The testimony is that the government representative ordered Noel to put the sash in, and the letters show that McNulty Bros., when informed that the sash would be hung before the plastering was done, made no objection and did their work with the sash in place. There is testimony, which I am not prepared to reject, that the course followed was reasonable and proper, at least as to the buildings which were plastered during cold weather. It is not entirely clear how the auditor dealt with these items. The language of his report (pages

10 and 11) would indicate that he disallowed them all. But his schedule on page 11 shows that he allowed $1,069.96 in addition to $1,500 for heat. What the $1,069.96 covered is not stated. I infer that he allowed nothing in respect to the sash and glass, upon the ground that the sash should not have been hung before the plastering was done, and that the damage to it is therefore not chargeable to McNulty. If so, for reasons above suggested, I am unable to agree with him. Just how much this item of damage came to in dollars and cents is not very clear. From the schedule in the account between McNulty Bros. and Noel, and such other evidence as bears upon it, I conclude that $500 will be a fair allowance for it, in addition to the $2,569.96 found by the auditor.

I see no sufficient reason for varying the auditor's finding on the removal of rubbish, and on the painting extras which he allowed Daniels and Blomquist. As to the latter, he regarded the evidence as sufficient to support a finding. He has not undertaken to report all the evidence on which his conclusion was reached; and there is nothing now before me on which his finding should be rejected. It appears to be a matter of judgment, resting on his general familiarity with what was done. Such findings are quite as likely to be right as those which purport to be more meticulously exact.

[3] The defendants raise numerous questions of law of a highly technical character, none of them in the least affecting the merits of the controversy. The statute in question and the proceedings under it are such as to offer great opportunity for such objections, which, if favorably regarded, might often be invoked to defeat substantial justice. In order to prevent this, the Supreme Court has recognized the necessity of a broad and liberal construction of the act:

"Decisions of this court have made it clear that the statute and bonds given under it must be construed liberally, in order to effectuate the purpose of Congress as declared in the act. In every case which has come before this court, where labor and materials were actually furnished for and used in part performance of the work contemplated in the bond, recovery was allowed, if the suit was brought within the period prescribed by the act. Technical rules otherwise protecting sureties from liability have never been applied in proceedings under this statute." Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 380, 37 Sup. Ct. 614, 616 (61 L. Ed. 1206).

This was the view which the auditor followed in his rulings of law, brushing aside merely technical defenses. In my opinion he was right in so doing.

The auditor's finding in favor of McNulty Bros. is reduced $500.

Judgment upon the auditor's report, as so modified.